# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

DAVID KLEIN,                          )
                                      )
        Plaintiff,                   )
                                      )
v.                                    )          CV420-272
                                      )
LUIS CARASAS,                         )
                                      )
        Defendant.                   )

## <u>ORDER</u>

Defendant Luis Carasas removed this personal-injury auto-wreck case from the State Court of Chatham County. *See generally* doc. 1 (Notice of Removal). He moves to exclude the causation opinions of Plaintiff David Klein's treating physicians (the "Causation Motion"), doc. 38, and all testimony of Klein's life care planning expert Robert Tremp (the "Tremp Motion"), doc. 37. Klein responded in opposition to the Causation Motion, doc. 45, and Carasas replied, doc. 47. Klein also responded in opposition to the Tremp Motion. Doc. 44. For the following reasons, the Causation Motion is **DENIED**, doc. 38, and the Tremp Motion is **GRANTED**, doc. 37.

I.    *Carasas' motion to exclude the causation opinions of Klein's treating physicians is denied.  Doc. 38.*

Klein disclosed three of his treating physicians as expert witnesses.

Doc. 38-4 at 2-3.  The disclosure states that he:

> anticipates that the treating physicians . . . may provide testimony concerning the causal relationship of [his] injuries to the subject collision or testimony otherwise provided by Rules 702, 703, or 705 of the Federal Rules of Evidence.

*Id.*  Carasas argues that the Court should not permit them to testify about causation because they did not prepare expert witness reports.

Doc. 38 at 1.  He also contends, in the alternative, that their causation testimony should be excluded because Klein did not sufficiently summarize their testimony in his disclosures.  *See, e.g.*, doc. 47 at 5.

The Federal Rules require a party seeking to introduce testimony by a "retained or specially employed" expert to disclose the identity of the expert and provide a report.  Fed. R. Civ. P. 26(a)(2)(A)-(B).  For certain witnesses not "specially employed" to testify, the Rule does not require a report, but merely disclosure of "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).

2

Generally, treating physicians are not required to submit expert reports under Rule 26(a)(2)(B). *See In re Denture Cream Prod. Liab. Litig.*, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012) ("When a treating physician testifies regarding opinions 'formed and based upon observations made during the course of treatment,' the treating physician need not produce a Rule 26(a)(2)(B) report." (citation omitted)). "[T]reating physicians offering opinions beyond those arising from treatment," including causation opinions in some circumstances, "are experts from whom full Rule 26(A)(2)(B) reports are required." *Id.* (citing *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011)). Accordingly, if the treating physicians' causation opinions were "formed and based on observations made during the course of treatment, then no Subsection B report is required, . . . albeit [a] Subsection C report . . . will be required. If, however, [their opinions were] based on facts gathered outside the course of treatment, . . . then a full subsection B report will be required." *Kondragunta v. Ace Doran Hauling & Rigging Co.*, 2013 WL 1189493, at *12 (N.D. Ga. Mar. 21, 2013) (citations omitted).

"If a party fails to provide information or identify a witness as required by [Rule 26(a)], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).

It is impossible for the Court to determine whether the treating physicians' unspecified causation opinions were formed based on observations made during Klein's treatment because the record only indicates that they *may* testify about "the causal relationship of [Klein's] injuries to the subject collision." Doc. 38-4 at 2-3; *see also* doc. 45 at 2 (Klein notes that Carasas has not deposed the treating physicians). The Court, however, need not decide whether the treating physicians should have produced Rule 26(a)(2)(B) reports. Even if Klein was only required to supply Rule 26(a)(2)(C) disclosures, they are deficient.

Although the Eleventh Circuit has "not yet clarified what the minimum disclosure requirements of non-retained treating physicians

are under Rule 26(a)(2)(C)," *Milton v. C.R. Bard, Inc.*, 2021 WL 67356, at

*10 (M.D. Ga. Jan. 7, 2021), courts have held that a Rule 26(a)(2)(C)

disclosure is inadequate "(1) if it merely repeats the exact same set of

boilerplate language for a number of experts without giving nuance to

the specificities on which each will opine, or (2) points to a large trove of

facts and data with no list of subjects or summary in lieu of an official

Rule 26(a)(2)(C) disclosure," *Andrews v. United States*, 2021 WL 7452225,

at *8 (N.D. Fla. June 2, 2021) (citing *Jaworek v. Mohave Transportation

Ins. Co.*, 2020 WL 3425116, at *2 (W.D. Wis. June 23, 2020)); *see also

Brackett v. Nat'l Specialty Ins. Co.*, 2022 WL 2915659, at *2 (M.D. Fla.

May 31, 2022) (disclosure is insufficient when it "fails to include [the

witness'] specific opinions and the facts upon which he will base his

opinions.").

Klein's brief assertion that three treating physicians may testify

about "causa[tion]" is insufficient, particularly when the same

"boilerplate" language is used for all three experts without

differentiation.  *See Andrews*, 2021 WL 7452225, at *8; *Kondragunta*,

2013 WL 1189493, at *8 ("conclusory hint of the anticipated testimony"

of treating physicians is insufficient).  *Compare Brackett*, 2022 WL

5

2915659, at *2 (disclosure describing testimony regarding, *inter alia*, "the cause and the extent of damage to the insured property arising from of the loss" is insufficient under Fed. R. Civ. P. 26(a)(2)(C)), *with Jaworek*, 2020 WL 3425116, at *2-3 (disclosure describing, *e.g.*, "retinal breaks in the collision, necessitating retinal detachment surgery" and expected testimony that "the collision caused 'permanent bilateral sensorineural hearing loss and tinnitus'" is "just barely" sufficient under Fed. R. Civ. P. 26(a)(2)(C)).[1]

Klein's failure to comply with Rule 26 does not necessarily foreclose his use of the treating physicians' causation testimony.   Rule 37(c) provides that exclusion of undisclosed or inadequately disclosed evidence is not required if the defective disclosure "was substantially justified or is harmless."   Fed. R. Civ. P. 37(c)(1).   Klein does not argue that his

---

[1] Klein defends the disclosures as sufficient under Rule 26(a)(2)(C) by noting that his "medical records contain the [treating] physicians' findings and assertions that the injuries [they were treating] were caused by the subject collision[.]"  Doc. 45 at 4. As the *Kondragunta* Court explained, however, "the fact that plaintiff provided all his medical records to the defendants does not mean that plaintiff has fulfilled the 'summary of the facts and opinions' prong of Rule 26(a)(2)(C).   Allowing medical records to be submitted in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a 'summary.'"   *Kondragunta*, 2013 WL 1189493, at *6 (footnote, citations, and quotations omitted).

insufficient disclosure was "justified", *see generally* doc. 45; rather, he contends that they were "harmless." *Id.* at 5-9.

Courts weigh five factors when considering whether an insufficient disclosure is harmless:

> (1) the surprise to the party against whom the evidence would be offered;
> (2) the ability of that party to cure the surprise;
> (3) the extent to which allowing the evidence would disrupt the trial;
> (4) the importance of the evidence; and
> (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*See Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1366 (S.D. Ga. 2016) (citing *Cambridge Univ. Press v. Becker*, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010)); *see also  Abdulla v. Klosinki*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012) ("The district court has broad discretion in determining whether a violation is justified or harmless." (quotation and citation omitted)).

This Court has recognized that the first and second factors weigh particularly heavily against a motion to exclude pursuant to Rule 37(c)(1) where, as here, Carasas made no attempt to obtain additional information regarding the treating physicians' causation testimony. *See* doc. 47 at 9 (complaining that Klein did not provide "one iota of

7

specificity" regarding the causation testimony without indicating that he ever complained about the disclosures until filing the Causation Motion); *Borkowski v. Wal-Mart Stores E., LP*, 2021 WL 3485442, at *4 (S.D. Ga. Mar. 23, 2021) (quoting *Kondragunta*, 2013 WL 1189493 at * 8) ("[A] party who 'had the ability to complain' had the ability to cure any surprise caused by insufficient disclosures."); *Castle-Foster v. Cintas Corp. No. 2*, 2021 WL 601877, at *11 (S.D. Ga. Feb. 16, 2021) ("Even if these disclosures had been inadequate, defendants could not justifiably claim the necessary surprise to exclude them. . . . [C]hallenging these disclosures at this juncture smacks of sandbagging."). Absent any description of Carasas' "efforts . . . to remedy perceived defects" in the disclosures, the first and second factors militate in favor of harmlessness. *Landivar v. Celebrity Cruises, Inc.*, 340 F.R.D. 192, 196 (S.D. Fla. 2022); *see also Kondragunta*, 2013 WL 1189493, at *8 ("Defendants . . . laid in wait, hoping that plaintiff's non-compliance would doom his ability to offer . . . expert testimony.").

Carasas attempts to analogize this case to three cases in which the Court excluded expert testimony for a party's insufficient Rule 26(a)(2) disclosures: *Rangel v. Anderson*, 202 F. Supp. 3d 1361 (S.D. Ga. 2016),

*Kraese v. Jialiang Qi*, 2021 WL 640826 (S.D. Ga. Feb. 18, 2021), and *Martin v. Wal-Mart Stores East, LP.*, 2020 WL 5949222, (S.D. Ga. Oct. 7, 2020). *See* doc. 38 at 17 ("[Carasas] is also caught in the same position enumerated by the Court in [*Kraese*] . . . and [*Martin.*]"); doc. 47 at 5 ("Allowing Plaintiff to cure [his disclosure] failure at this juncture would be equivalent to the situation contemplated in *Rangel*[.]"). The analogies, however, are not persuasive.

In *Rangel* and *Kraese*, the parties challenging witnesses on inadequate disclosure grounds actually deposed the experts at issue before seeking exclusion of their testimony. *See Rangel*, 202 F. Supp. 3d at 1365; *Kraese*, 2021 WL 640826, at *1. Further, in *Rangel*, the plaintiff "had not provided *any* disclosure regarding [the treating physician] and, thus, had not even *hinted* that [he] would testify about anything other than the facts regarding his treatment of Plaintiff." 202 F. Supp. 3d at 1367 (emphasis added); *see also id.* ("Plaintiff's counsel . . . only realized that [the treating physician] could act as a causation expert at the deposition"). Similarly, in *Kraese*, the plaintiff only disclosed that the treating physician was a "person[ ] likely to have discoverable information" and that the plaintiff "may call on [her] physicians for

expert opinions concerning Plaintiff's rendered treatment." 2021 WL 640826, at *5.[2] The Court is unpersuaded by Carasas' analogies because Klein's disclosure, although deficient, indicated the possibility that his treating physicians would offer causation opinions. *See* doc. 38-4 at 2-3.

This case is also distinct from *Martin*. There, even after the deficiency in plaintiff's disclosure was "brought to [her] attention", she acknowledged that her treating physician required a Rule 26 disclosure and "failed to even attempt to provide a proper [one]." *Martin*, 2020 WL 5949222, at *4. Here, although Klein's disclosures were insufficient under Rule 26(a)(2)(C), Carasas did not raise that deficiency until he filed the Causation Motion, and Klein has never conceded that his disclosure was deficient. *See, e.g.*, doc. 45 at 3-5. This case is more analogous to *Borkowski*, where the deficiencies in the plaintiff's disclosures were evident when they were served, and "Defendant apparently took no action on that knowledge until after the deposition deadline had passed and less than fourteen days remained before the *Daubert* deadline." 2021 WL 3485442, at *4.

---

[2] Additionally, the Court in *Kraese* explained that the plaintiff had already been denied leave to file untimely expert disclosures, which weighed against a finding of "harmlessness." 2021 WL 640826, at *6.

The remaining factors are more ambivalent, but still do not balance against harmlessness.  The third factor weighs in favor of harmlessness because "there is no trial set in this case", *Borkowski*, 2021 WL 3485442, at *5, and the parties have not filed any dispositive motions which would be impacted by additional discovery regarding the treating physicians, *see Kroll v. Carnival Corp.*, 2020 WL 4926423, at *6 (S.D. Fla. Aug. 20, 2020).  As to the fourth factor, the Court recognizes that causation testimony, in general, is "important" to Klein's tort claim.  However, it is impossible for the Court to determine the specific importance of the treating physicians' causation testimony in this case given Klein's terse disclosure, and since he plans to offer causation testimony from another expert.  *See, e.g.*, doc. 45 at 11-12 (Klein discusses the causation testimony of his radiology expert Dr. Sean Mahan); *Borkowski*, 2021 WL 3485442, at *5 ("As to the fourth [factor], the parties have not fully explained the precise significance of the treating physicians' causation testimony. . . . That factor, then, is equivocal.").  Finally, Klein's assertion that his insufficient disclosure was an "honest and minor mistake" does not show that the fifth factor weighs in his favor.  Doc. 45 at 9.

In sum, the Court finds that the factors balance in favor of a finding of harmlessness, particularly since Carasas does not explain why he did not raise the issue until filing the Causation Motion. *See Landivar*, 340 F.R.D. at 196 ("[I]f an issue about a party's disclosure obligations arises, the parties must work to resolve it before seeking the severe sanction of excluding an expert's testimony. . . . The Court will not impose the draconian sanction of excluding testimony from Plaintiff's only expert when Defendant made no attempt to resolve the issue by more measured means." (quotations and citations omitted)).[3]

"Neither party's behavior in this case has been exemplary." *Whitmore v. Fed. Express Corp.*, 2017 WL 11537385, at *2 (S.D. Fla. Jan. 5, 2017). However, given the Court's determination that Klein's

---

[3] Carasas also appears to raise a *Daubert* challenge to the treating physicians' causation testimony. *See* doc. 38 at 8-12. He argues that they need to perform a "differential etiology" to render causation opinions in this case, *id.* at 9, and that it would be impossible for Klein to show that they reliably conducted that analysis given his brief expert disclosure. *Id.* at 12. Absent any specific detail regarding the treating physicians' potential testimony, "the Court does not have sufficient evidence to perform [*Daubert*'s] gatekeeping task." *Yeager v. Buxton*, 2018 WL 4620884, at *5 (D. Kan. Sept. 26, 2018) (quotations omitted) ("[The *Daubert* challengers] have not proffered testimony from either witness. The Court surmises this is because [they] did not depose either witness. The Court has not even seen the relevant medical records generated by the witnesses. The Court has simply been provided [the] expert designation of the two witnesses."). Carasas remains free to assert a *Daubert* challenge to the treating physicians during the reopened motions period, discussed below.

insufficient disclosures were "harmless," the Court will follow the "balance of authority" and afford Klein an opportunity to submit a disclosure compliant with Rule 26(a)(2)(C), and permit the parties to conduct additional (but limited) discovery. *Borkowski*, 2021 WL 3485442, at \*5; *see Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1301 (S.D. Fla. 2021); *see also* Fed, R. Civ. P. 26(e).

Klein is **DIRECTED** to serve a supplemental disclosure regarding the treating physicians on Carasas no later than 7 days from the date of this Order.  No later than 14 days from the date of this Order, the parties are **DIRECTED** to confer and file a joint status report proposing the deadlines for and scope of the reopened discovery period.  The parties must also propose deadlines for and the scope of motions following the reopened discovery period.  To the extent the parties are unable to agree on any of the content in the joint status report, they must explain their disagreement and alternative proposals in the report.  If the parties are unable to agree, their joint status report should also include proposed dates and times for a status conference, if the Court concludes such a conference is necessary.

II.  *Carasas' motion to exclude the testimony of Klein's expert Robert Tremp is granted.  Doc. 37.*

Klein seeks to introduce the testimony of Robert Tremp, a life care planning expert, regarding "the anticipated, future medical care that [Klein] may need . . . ."  Doc. 44 at 2; *see also* doc. 37-4 at 15-32 (Tremp CV and report).[4]  Carasas argues that Tremp is not qualified, his methodology is not reliable, and his opinions would not help the trier of fact.  *See* doc. 37 at 11-16.

Federal Rule of Evidence 702 compels the Court to perform a "gatekeeping" function concerning the admissibility of expert scientific evidence.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993)).  In performing this task, the Court must consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

[4]  Specifically, Tremp offers opinions on Klein's need for and the cost of orthopedic office visits, lumbar fusion/refusion surgery, physical therapy, diagnostic MRI, diagnostic X-ray, pain management visits, medications, homemaker services, mental health services, and case management services.  Doc. 37-4 at 31.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).   The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence.  *Daubert*, 509 U.S. at 592 n.10; *Kawas v. Spies*, 2022 WL 2055281, at *3 (S.D. Ga. June 7, 2022).

Under the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260–61; *see also* Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]").   But, "[w]hen an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942-43 (11th Cir. 2015.) (quoting *Frazier*, 387 F.3d at 1261).

As to the second prong, the reliability "criterion remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261.  "The Supreme Court in *Daubert* set out a list of 'general

observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted).  These factors, or observations, inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field."  *Id.* (citation omitted). "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262.

Expert testimony must also assist the trier of fact.  *Frazier*, 387 F.3d at 1262.  "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."  *Id.* (citation omitted).  This inquiry is commonly called the "helpfulness" inquiry.  *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Frazier*, 387 F.3d at 1260).  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting *Daubert*, 509 U.S. at 591).

Carasas argues that the Court should exclude Tremp's life care planning opinions on, *inter alia*, "reliability" grounds because many of his opinions regarding Klein's future care were contradicted by a letter from Dr. Mark Flood, one of Klein's treating physicians, after Tremp created the life care plan.[5]  Doc. 37 at 14-15.  Carasas points to Tremp's deposition testimony that the letter changes the opinions he would render to a jury:

> Q: So is [Flood's letter] something that you would use to amend . . . the Life Care Plan?
>
> A: Yeah.  Sure. If I was in front of a jury right now, I would say at this point in time, there is, you know, his orthopedic surgeon that did the surgery indicated there is no follow ups recommended as of April 2021 currently and for them to apply it as such.
>
> Q: And just from a general sense, so if a treating physician basically says a certain type of care they're not recommending in the future, you're not going to include it in Life Care Plan, right?
>
> A: I'm including it now.  I mean, I could have done a supplemental, but this thing speaks for itself.  It indicates at this point in time there is no future office visits planned according to Dr. Flood.

Doc. 37-5 at 23.  Tremp clarified the impact of Flood's letter on his opinions later in his deposition:

---

[5] Flood's letter indicates that he does not recommend, *e.g.*, therapy, massage therapy, periodic diagnostics, additional specialist evaluations such as pain management and neurology, and assistive devices/therapeutic aids.  *See* doc. 37-5 at 100-103.

17

Q: Do you have any intention to update the report based on [Flood's letter]?

A: I mean, I could.  I think my testimony is pretty clear today that, you know, Dr. Flood's letter speaks for itself. . . .  I could indicate, you know, in a one-page letter indicating the same thing, but, you know – and then conversely, you know, if I do have new information from a new evaluation from a doctor and there are future care needs that are current, then I would state that as well.

Doc. 37-5 at 28; *see also id.* at 24-25 (Tremp testifies that the opinions in his report would change based on Flood's assertions regarding, *e.g.*, revision surgery to the lumbar spine, additional therapy, MRI frequency, and X-rays.).

Although life care planning experts can render reliable future care opinions, *see, e.g.*, *Lee v. Fischer*, 2009 WL 10678390, at *3 (S.D. Ga. July 10, 2009), Klein must still show that Tremp "reliably applied [his] principles and methods to the facts of the case" to clear *Daubert*'s "reliability" hurdle.   Fed. R. Evid. 702; *see Lawrence v. Great Lakes Dredge & Dock Co., L.L.C. of Louisiana*, 2019 WL 9045085, at *2 (E.D. La. Apr. 24, 2019) ("Savant may be an expert in life care planning, but her testimony will be inadmissible if Lawrence cannot demonstrate that she applied her expertise to relevant, case-specific facts."); *see also Cosseboom v. Royal Caribbean Cruises Ltd.,* 2020 WL 9071566, at *3

(S.D. Fla. Dec. 16, 2020) (". . . Rule 702 requires [an experience-based expert] to explain how [his] experience is reliably applied to his opinions and the facts . . . ."). Carasas has identified several instances of Tremp asserting that his opinions would be different from those in his report based on Flood's letter, doc. 37 at 14, and Klein, the party bearing the burden of establishing "reliability", *Kawas*, 2022 WL 2055281, at *3, failed to address this argument in his response. *See generally* doc. 44.[6] Given Tremp's concession at his deposition that his future-need opinions are not based on the facts in this case, *i.e.*, Flood's letter, and since the record does not indicate that Tremp submitted any supplemental report pursuant to Fed. R. Civ. P. 26(e), Klein has not established the "reliability" prong.

Carasas suggests that Tremp's testimony regarding Flood's letter warrants wholesale exclusion of his opinions. *See* doc. 37 at 13-15. As discussed, Klein does not address Carasas' argument in his response. *See*

---

[6] The closest Klein comes to addressing Tremp's testimony regarding the Flood letter is the following: "[T]he fact that portions of the life care plan are allegedly inconsistent with treating physician recommendations, as Defendant suggests, would not render the testimony inadmissible. . . . Instead, any such evidence would go to the weight of Tremp's testimony on cross-examination, and not its general admissibility." Doc. 44 at 5. Tremp did not testify that his opinions are merely "inconsistent" with Flood's letter; rather, as discussed, he testified that the letter *alters* many of his opinions in the report. *See, e.g.*, doc. 37-5 at 23-25, 28.

*generally* doc. 44.  The Court agrees that Flood's letter appears to contradict *at least* most of the recommendations in Tremp's report. *Compare* doc. 37-5 at 98 (Tremp report), *with id.* at 100-103 (Flood's letter).  Since Klein bears the burden of establishing reliability, and since he does not attempt to salvage any of Tremp's specific opinions in light of the Flood letter testimony, the Tremp motion is **GRANTED**, doc. 37, and Tremp's testimony is **EXCLUDED**.[7]

Carasas also asserts that if the Court excludes Tremp's testimony, it should also exclude the testimony of Plaintiff's consulting economist Nik Volkov.  Doc. 37 at 17 (explaining that Volkov's opinions are "only related" to assessing Tremp's life care plan); *see generally* doc. 44 (Klein does not address Carasas' request regarding Volkov).  The Court agrees

---

[7] To be clear, the Court is not excluding Tremp's testimony because he failed to consider physicians' recommendations regarding Klein's future care, or because Flood's letter merely contradicts his opinions. *Compare* doc. 37 at 13 (Carasas argues that Tremp recommends treatment that "no doctor has prescribed or recommended"), *with Robinson v. Ethicon, Inc.*, 580 F. Supp. 3d 452, 460 (S.D. Tex. 2022) (distinguishing between opinions Tremp may and may not render without a physician's recommendation); *compare* doc. 37 at 11 (Carasas notes that Tremp "ignore[d] the recommendations of Plaintiff's medical providers"), *with McConnie-Navarro v. Centro de Fertilidad del Caribe, Inc.*, 2007 WL 7652299, at *7 (D.P.R. May 31, 2007) (admitting testimony of life care planning expert who considered and disagreed with treating physician's life expectancy opinion).  Tremp's testimony is **EXCLUDED** because he has conceded that it is not connected to the facts of this case, and Klein has made no attempt to salvage specific portions of his testimony in light of this concession.

that almost the entirety of Volkov's report is an assessment of Tremp's opinions.   *See* doc. 37-4 at 33-53.   Given the exclusion of Tremp's testimony, and since Klein has not carried his burden of establishing the admissibility of Volkov's testimony, Carasas' unopposed request is **GRANTED**, doc. 44, and Volkov's testimony is **EXCLUDED**.

### III.   *Conclusion*

For the foregoing reasons, the Causation Motion is **DENIED**, doc. 38, and the Tremp Motion is **GRANTED**, doc. 37.   Klein is **DIRECTED** to serve a supplemental disclosure regarding the treating physicians on Carasas no later than 7 days from the date of this Order.   No later than 14 days from the date of this Order, the parties are **DIRECTED** to confer and file a joint status report proposing the deadlines for and scope of the reopened discovery period.   The parties must also propose deadlines for and the scope of motions following the reopened discovery period.   To the extent the parties are unable to agree on any of the content in the joint status report, they must explain their disagreement and alternative proposals in the report.   If the parties are unable to agree, their joint

status report should also include proposed dates and times for a status

conference, if the Court concludes such a conference is necessary.

**SO ORDERED**, this 20th day of September, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA